BARHAM, Justice
(dissenting).
The defendant Archie Lee Williams and-two other persons were charged with aggravated rape as well as with armed robbery, the criminal charge involved in this-case. On the morning the cases were called for trial and in the presence of the jury venire from which would be formed-the juries to try the cases in that section-of court during that week, the State “advised the court” that it had elected to sever' in the aggravated rape charge and try the defendant Williams separately for that offense. Counsel for this defendant moved for a discharge of the jury venire because this had occurred in its presence and was prejudicial to him. However, the State has correctly shown that the defendant was not in fact tried under a severed indictment for that charge but went to trial under an indictment for armed robbery. The-bill of exceptions reserved in that other' proceeding in the trial court cannot properly be a part of this record.
Because the other two defendants pleaded guilty to the armed robbery with which they were charged jointly with Williams in this case, the State had to sever the indictment and try Williams alone on the robbery charge. However, the indictment had not in fact been severed, and there is nothing in the record to indicate a severance. When the court reporter read the only indictment in the record, he included the names of all three persons charged with *768 armed robbery. The jury knew after opening statement that although this defendant was charged with two others for this crime, for some reason he alone would be tried. The defendant timely objected, moved for a mistrial, and reserved Bill of Exceptions No. 2.*
In State v. St. Andre, 263 La. 48, 267 So.2d 190, 1972, I concurred when the State had failed to sever — that is, to file a separate indictment against the one of several defendants it chose to try alone. There, however, when the clerk read the indictment to the jury, he omitted the names of the other defendants, and I found that this could, under the particular facts of that case, constitute harmless error although it was a violation of a substantial right. Failure to sever is not harmless error in this case, and I am of the opinion that the defendant is entitled to a reversal.
The mandate of the Code of' Criminal Procedure is in clear and concise language :
“Art. 704. Severance
“Jointly indicted defendants shall be tried jointly unless:
“(1) The state elects to try them separately ; or
“(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.”
“Art. 70S. Effects of severance
"When the court has ordered severance of an indictment, the district attorney shall file separate indictments.
“In the case of a grand jury indictment, no further action by the grand jury is required. Severed indictments shall be considered as filed on the date of the filing of the original indictment. Proceedings under the original indictment are not affected by the severance except insofar as they may be inconsistent with some other provision of this Code. The effects of a severance, as stated in this article, apply to severances under Articles 532(3) and 704.” (Emphasis supplied.)
These articles demand the filing of separate indictments not only when the defendant moves for and is granted a severance, but also when the State severs voluntarily. The last sentence of Article 70S does not limit the application of the requirements of that article to severances obtained by the defendant; rather, it states that all severances made under the authority of Article 704 are subject to the effects of Article 705. This includes severances made at the election of the State. See Comment (a) of Article 70S.
*770 No matter by what method or on whose part a severance is accomplished, it is in fact accomplished only when a separate or a severed indictment is filed. Failure to file a severed indictment is fatal if only one of several defendants jointly charged is to be tried. The indictment is the basis for the entire proceeding from arraignment to verdict and sentence. The original indictment must be in writing (C.Cr.P. Art. 464); if it is amended, the amendment must be in writing (C.Cr.P. Arts. 487 and 488), and if it is severed, the severed indictment must be in writing (C.Cr.P. Art. 705). Article 705 does not merely permit the filing of a separate indictment; it orders the filing of a separate indictment when there is to be a severance .for purposes of trial. Nothing short of a separate filed written indictment can validly support such a proceeding.
While the error alleged in this bill of exceptions is reversible error, there is another ground for reversal in the case.
Bill of Exceptions No. 14 was reserved to the court’s overruling of defendant’s objection when the State, during rebuttal, played a taj>e recording of a statement given before trial by a witness Bill Jones. If this bill of exceptions is reviewed on the restricted basis of looking only to the evidence attached to and made a part of the bill, there has been a denial of defendant’s right to full confrontation of a witness. The only testimony attached is that of a police officer which shows that he took a statement from a man named Bill Jones but which does not connect Jones with the trial as a witness or as a defendant. There is also conversation between the court and counsel indicating that Bill Jones had in fact testified previously in the trial. There is also a charge from the court to the jury to consider the taped statement only for the purpose of impeaching Jones’s testimony in court “about the manner in which the statement was given”. If we do not look to the colloquy between the court and the attorneys as evidence — and the jury did not hear this colloquy. — , it is obvious that the State offered testimony to the jury in rebuttal by way of a recorded statement which denied the defendant the right to confront a witness. On the face of the bill this is obviously reversible error.
If we consider the colloquy which showed that Jones was a previous witness and that this statement was offered to impeach his testimony, then it is immediately apparent that the State failed to lay the proper foundation for impeaching a witness by a prior inconsistent statement. There is nothing in the bill of exceptions to show that the State confronted the witness with a prior contradictory statement. Since the witness was not on the stand, he obviously was not asked whether he made a statement, not told of the time, place, and *772 circumstances of the statement, not given the opportunity to explain the seemingly contradictory statement and admit or deny that he made such a statement. These exacting requirements of R.S. IS :493 were obviously not complied with. Considering the bill of exceptions in the light that the State was attempting to impeach a witness, the taped statement must be held to be improper rebuttal since the predicate for a prior inconsistent statement to be used for impeachment was not laid. There is no per curiam to explain the deficiencies in the bill, nor has the State exercised its right to supplement the bill.
As I am often persuaded to do, I have looked at the objection in the perspective of the whole record, disregarding the technical requirements for the perfected bill of exceptions. All the evidence is before us, and it is very simple to place this bill with the limited evidence attached in its proper perspective. The result is the same — reversible error.
Preliminarily,- I believe that when the State’s use of the recorded statement in rebuttal is examined in the context of the full record, it must be found to be improper rebuttal, for the recording of this statement should have been played while the witness was on the stand. A recorded statement is, and we have so held, in the nature of a written statement. The proper time for impeachment by a prior written or recorded statement is while the witness is on the stand. An oral statement given to a third party may be introduced in rebuttal for purposes of impeachment.
However, I find the error more serious for another reason. The State called Bill Jones on Tuesday as its witness. He testified against the defendant and admitted having previously given a statement to the police and that his testimony from the witness stand was the same as the previous .recorded statement taken from him by the police. On Friday the defense, having apparently learned that the witness would give testimony contradictory to that pre-viously given, called Bill Jones as its own witness. At that time he testified that he had lied both on Tuesday when he testified for the State and in his recorded statement given to the police before trial. He then proceeded to testify to what he called the truth. When the State could not get him to deny making the prior inconsistent statements, it attempted to have him say that his taped statement recorded only his "yes” and “no” answers to queries by the police and that it was not in “narrative” form. On redirect examination, counsel for the defendant explained what “narrative” meant, and then asked the witness whether he actually had given the police in his own words in response to questioning a version of what had occurred on the night *774 of the offense. He admitted that was the way the recorded statement was made.
The State, having failed to get the witness to deny the prior recorded contradictory statement, tried to justify its right to use the recorded statement for impeachment on the basis that he testified it was given in one form (not narrative) and that the playing of the tape would indicate it was in fact given in another form. The court admitted the statement, and so charged the jury, “solely for the purpose of impeaching what Mr. Jones testified to in court about the manner in which the statement was given”. (Emphasis supplied.) Jones did not deny, in fact he admitted, that the recorded statement was in narrative form, although he may not have understood the meaning of the word “narrative”.
Moreover, whether the statement was in narrative form or not was a totally irrelevant fact. R.S. 15 :494 states categorically: “It is not competent to impeach a witness as to collateral facts or irrelevant matter.”
Furthermore, the predicate required by R.S. 15 :493 had not been laid for impeaching the witness. The witness “distinctly admit [ted] making such statement”, and therefore the statement could not be offered for the purposes of impeachment.
Both Bills of Exceptions No. 2 and No. 14 require reversal of this conviction.
I respectfully dissent.

 For a discussion of the court’s consideration of the 15 perfected bills of excep-. tions here, see my concurrence in State v. Ross, 263 La. 271, 268 So.2d 222.